## Allen v. Commonwealth.

(Decided March 11, 1938.)

534

R. S. ROSE for appellant.

HUBERT MEREDITH, Attorney General, and W. OWEN KEL-LER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER—Reversing.

Joe Allen was charged by indictment with house-breaking, and further in that indictment was charged with two previous convictions of felonies. See occurrences (c), (a), and (b), infra. He was convicted, his punishment was fixed at life imprisonment, and he has appealed. We will now epitomize what is shown in this record.

### Epitome.

(a) On March 18, 1920, upon plea of guilty, Joe Allen was convicted of robbery in the circuit court of Bell county, Ky., and sentenced to 4 years in the penitentiary.

(b) On April 3, 1924, upon plea of guilty, Joe Allen was convicted of a felony (housebreaking) in the circuit court of Dickenson county, Va., and sentenced to 3 years in the penitentiary.

(c) On October 6, 1935, Joe Allen pried open a window and entered the depot of the Louisville & Nashville Railroad Company, in the city of Harlan in Harlan county, Ky., and pried off the wall a vending machine, which he broke open and took therefrom a number of pennies.

(d) On April 13, 1936, at a special extended term of the Harlan circuit court, Joe Allen was tried for occurrence (c) under an indictment for housebreaking, was found guilty, and his punishment fixed at 5 years in the penitentiary, and he began his imprisonment under that judgment.

(e) On December 11, 1936, in the case of Thompson v. Com., 266 Ky. 529, 99 S. W. (2d) 705, this court held that the above-mentioned special extended term of the Harlan circuit court was invalid.

(f) On February 20, 1937, after serving 10 months and 19 days under conviction (d), supra, Joe Allen was by habeas corpus proceeding, which he sued out, in Franklin circuit court, released from the custody of the warden of the penitentiary and remanded to the custody of the jailer of Harlan county, pursuant to section 423 of the Criminal Code of Practice.

(g) On April 3, 1937, the grand jury of Harlan county indicted Joe Allen for the housebreaking (c) and also charged him with the previous convictions (a) and (b), under section 1130, Kentucky Statutes, often called "The Habitual Criminal Act."

(h) On August 18, 1937, Allen was placed upon trial under this indictment, to which he pleaded simply, "Not Guilty."

(i) The jury found him guilty and found he had been convicted of felonies twice previously as charged in the indictment and fixed his punishment at life imprisonment, and from the judgment entered on that verdict he has appealed.

In his efforts to reverse this judgment, Allen has cited and relies upon a number of matters in the record, all of which he avers are erroneous. Some of these alleged errors are so trivial we shall not discuss them. Others have enough merit to justify a brief discussion of them and some rise to the dignity of reversible errors. These we shall discuss with greater elaboration.

Allen introduced no evidence. His guilt of breaking into this railroad depot, taking this vending machine, breaking it open, and taking the pennies out of it, is so thoroughly established by the evidence that Allen does not question it anywhere. All his hopes for reversal are rested upon other grounds.

## Section 1130, Kentucky Statutes.

Our Habitual Criminal Act, section 1130, Kentucky Statutes, has been upon the statute books of Kentucky for quite a while. Just when it first appeared is of no great importance. It was section 22, c. 28, art. 1, on page 372 of volume 1 of Stanton's Revised Statutes. It

was section 12, c. 29, art. 1, of our General Statutes, and, after the adoption of our present Constitution, the General Assembly, in its revision of our statutes, re-enacted it as section 4, art. 1, c. 182, of Acts of 1891-92-93. See page 756 of those acts.

## The Title.

In the brief filed for appellant, it is alleged that the title of this act is "*Second and Third Conviction, Punishment*"; that those five words are not a fair index to the act; and that the act is therefore void for conflict with section 51 of our present Constitution.

The five words, which we have italicized and of which the appellant is complaining, are no part of that act. They constitute simply a headline written and adopted by Judge Carroll when he compiled the Kentucky Statutes. If appellant will look on page 756 of the Acts of 1891-92-93, he will see beginning on that page an act, the title of which is, "An Act relating to crimes and punishments." Those words just quoted constitute a fit, pat and proper title to the entire act there found, which is chapter 182 of the Acts of 1891-92-93, of which section 4 became and is now section 1130, Kentucky Statutes.

## Constitutionality, Other Questions.

We shall not go into an extended discussion of other questions raised regarding the constitutionality of section 1130. We feel that has been fully and definitely settled by Taylor v. Com., 3 Ky. Law Rep. 783, 11 Ky. Op. 642; Chenowith v. Com., 12 S. W. 585, 11 Ky. Law Rep. 561; Combs v. Com., 20 S. W. 268, 14 Ky. Law Rep. 245, and Turner v. Com., 191 Ky. 825, 231 S. W. 519. Students who desire to pursue this question further should examine 16 C. J. p. 1339, sec. 3150 et seq., and 12 C. J. p. 1107, sec. 817 et seq., also notes in 58 A. L. R. 20 et seq., and 82 A. L. R. 345 et seq.

In the cases arising under our Prohibition Law, chapter 33, p. 109, Acts of 1922, the constitutionality of its provisions increasing the punishment upon second and third offenders was upheld. Here are some of them: Thacker v. Com., 228 Ky. 819, 16 S. W. (2d) 448, certiorari denied 280 U. S. 578, 50 S. Ct. 31, 74 L. Ed. 629; Pennington v. Com., 231 Ky. 494, 21 S. W. (2d) 808; and Dunnington v. Com., 231 Ky. 327, 21 S. W. (2d) 471.

Such statutes as our section 1130 do not punish twice for the same offense. They simply recognize that the first conviction imposed upon the one so convicted a definite status, that of a "convicted felon," and then provide that, when parties of that status are convicted of a second offense, the punishment may be increased, and in a like manner the punishment may be increased for third convictions because of the status imposed by the second conviction.

### Proof of Conviction (a).

To prove the conviction of Joe Allen for the robbery (a), the Commonwealth introduced Bob Hollingsworth, who testified he was deputy clerk of the Bell circuit court, and then had in his custody the records of that court, for March, 1920, and he produced such records and read from Order Book 14, p. 129, the order of March 18, 1920, showing that Joe Allen was then and there tried for robbery, was convicted, and his punishment fixed by the verdict of the jury at 4 years in the penitentiary, and that by a later order Allen was sentenced.

Allen's objection to this evidence was overruled and he excepted, but apparently he was not very serious about his objection, and has made only a perfunctory mention of it in his brief. This point is utterly without merit. There could be no better evidence of Mr. Allen's trial and conviction then than the original order book entries solemnly made by the court officials at the time. Jones on Evidence, 2d Ed., sec. 1885.

### Conviction (b).

The Commonwealth of Kentucky was not able to produce the original records of the circuit court of Virginia wherein Allen was convicted in 1924 of the housebreaking (b), supra, and in its efforts to prove this conviction the following paper was introduced over the objections of Allen and read to the jury:

"Virginia:

"At a circuit Court continued and held for Dickenson County, Virginia, at the Court House thereof on Thursday, April 3rd, 1924.

"Present: The same Wm. E. Burns, Judge Presiding on yesterday.

"(Indictment made by Special Grand jury at

this Term, to-wit: Commonwealth vs. Joe Allen and Clyde Dalton, indictment for Felony, a true bill, Henry Keel, Foreman.)''

"Commonwealth of Virginia         Plaintiff
    vs.  Felony (House Breaking)
Joe Allen, and Clyde Dalton        Defendants.

"This day came the Commonwealth by her attorney and the defendants, Joe Allen and Clyde Dalton, appeared into court in custody of the Sheriff, and were arraigned, and upon their arraignment, plead guilty to the indictment, and in answer to the inquiry of the Court if they desired an attorney to defend them, stated that they did not desire a lawyer to defend them but confessed and plead guilty to the charge in the indictment.

"It is therefore considered by the Court that the defendants are guilty of house breaking and fix their punishment at three years in the State Penitentiary of this Commonwealth.

"And thereupon the defendants were asked if they had anything further to offer or to say why the court should not proceed to pronounce sentence upon them according to law, and nothing being offered in delay, it is therefore considered by the Court that the said defendants, Joe Allen and Clyde Dalton, be confined in the penitentiary of this Commonwealth for the period of three years each, and thereupon the prisoners were remanded to jail.

        "[Signed] Wm. E. Burns, Judge.

"A copy Teste:
    "W. E. Counts, Clerk
    "By K. E. Fuller, D. C.
"([Seal] Circuit Court, Dickenson County Virginia.)''

### Reversible Errors.

When the above paper was offered in evidence Allen objected, his objections were overruled, the paper was read in evidence, and Allen excepted. That was error for several reasons, which we shall now discuss.

Allen was in the first part of this indictment charged with breaking into this railway depot, taking this vending machine, etc. Next in order to increase the punishment that might be imposed upon him for that,

the Commonwealth charged him with the robbery (conviction (a) supra, which it obtained in Bell county, Ky., in 1920, and to still further increase the punishment that might be imposed upon Allen for breaking into this depot the Commonwealth of Kentucky attempted to charge Allen with the 1924 Virginia conviction (b), supra. The provisions of section 1130, Kentucky Statutes, are:

Section 1130.

"Every person convicted a second time of felony, the punishment of which is confinement in the penitentiary, shall be confined in the penitentiary not less than double the time of the first conviction; and if convicted a third time of felony, he shall be confined in the penitentiary during his life. Judgment in such cases shall not be given for the increased penalty, unless the jury shall find, from the record and other competent evidence, the fact of former convictions for felony committed by the prisoner, in or out of this state."

To convict Allen and enhance his punishment under the above statute to life imprisonment, the Commonwealth had to charge in its indictment and establish in its proof all the facts required by section 1130 to make it applicable. Here is all that is said in this indictment regarding this conviction in Virginia:

"Your Grand Jury further charges that the defendant Joe Allen was indicted in the Dickenson County Circuit Court of Virginia at the April or March term, 1924, and for a charge of house breaking, and that thereafter and on the 3rd day of April 1937, the defendant was tried before a jury duly selected and sworn to try said charge, and said jury brought into court a verdict of guilty and fixed his punishment at 3 years in the State Penitentiary. Sentence was passed upon said verdict and judgment and the said sentence has never been vacated, modified, set aside or appealed from as will and does appear fully from the records of the Circuit Court Clerk of the said Dickenson County office. And your Grand Jury further charges that the said Joe Allen so tried and convicted was and is the same Joe Allen charged in the first part of this indictment."

The courts of Kentucky do not take judicial notice of the laws of other states or of the jurisdiction of their courts. Thus it happens that the facts alleged and proven regarding the robbery conviction of Allen in 1920 in Bell county, Ky., were sufficient to set in operation that part of section 1130, increasing the punishment upon a second conviction, for the courts of Kentucky are charged with judicial notice of the laws of Kentucky and the jurisdiction of her courts, but the similar allegations regarding the conviction of Allen for housebreaking in Virginia were insufficient to further increase to life imprisonment the punishment of Allen for breaking into this railway depot, for Kentucky courts do not take judicial notice of the laws of Virginia or the jurisdiction of the courts of Virginia.

This indictment should have alleged, and the proof should have established, that housebreaking is a felony in Virginia, and that the circuit court of Dickenson county, Va., had jurisdiction to try Allen for that. Gebhard v. Garnier, 75 Ky. 321, 12 Bush 321, 23 Am. Rep. 721; Montgomery v. Consolidated Boat Store Co., 115 Ky. 156, 72 S. W. 816, 24 Ky. Law Rep. 2004, 103 Am. St. Rep. 302; Louisville & N. R. Co. v. Sullivan's Adm'r, 76 S. W. 525, 25 Ky. Law Rep. 854.

The Commonwealth could have shown this by following the provisions of section 1640 et seq., Kentucky Statutes, and it should have done so if it desired to inflict a life imprisonment upon Allen for breaking into this depot.

This Virginia judgment is the judgment of a court of a sister state. In Letcher's Trustee v. German National Bank et al., 134 Ky. 24, 119 S. W. 236, 20 Ann. Cas. 815, this court held that the proper way to prove a judgment is by an authenticated copy of it. To same effect see Jones v. Hodgkins et al., 233 Ky. 491, 26 S. W. (2d) 19; Green v. Davis, 5 Ky. Op. 660, and Lowther Oil & Gas Co. v. McGuire, 189 Ky. 681, 225 S. W. 718.

By section 1, article 4, of the Constitution of the United States, it is provided:

"Full Faith and Credit shall be given in each State to the public Acts, Records, and Judicial Proceedings of every other State. And the Congress may by general Laws prescribe the Manner in which

542

such Acts, Records and Proceedings shall be proved, and the Effect thereof."

Pursuant to that provision, Congress on May 26, 1790, enacted what is now section 687 of 28 U. S. C. A. Later this state enacted what is now section 1635, Kentucky Statutes. There does not appear to be any substantial difference between the two acts. The provision of the act of Congress is:

"The records and judicial proceedings of the courts of any State or Territory, or of any such country, shall be proved or admitted in any other court within the United States, by the attestation of the clerk, and the seal of the court annexed, if there be a seal, together with a certificate of the judge, chief justice, or presiding magistrate, that the said attestation is in due form. And the said records and judicial proceedings, so authenticated, shall have such faith and credit given to them in every court within the United States as they have by law or usage in the courts of the State from which they are taken." R. S. sec. 905, 28 U. S. C. A. sec. 687.

The foregoing statute relates to the records and judicial proceedings of the courts of sister states. On March 27, 1804, Congress enacted what is now section 906, U. S. R. S., section 688, 28 U. S. C. A., which provides for the authentication of records and books of sister states, not appertaining to a court. The authentication required by that act in substance required, in addition to the certificates required by the Act of May 26, 1790, a second certificate by the clerk, "under his hand and the seal of his office, that the said presiding justice is duly commissioned and qualified."

In Young v. Chandler, 52 Ky. 252, 13 B. Mon. 252, a judgment bearing three certificates came to this court and we held that the third certificate did no harm. That opinion has been very generally followed since, in authentication of all matters coming from sister states. No special form has ever been provided, but the judgment of this Virginia court is not certified as required by either of these acts of Congress or by section 1635, Kentucky Statutes. There is no certificate by the judge that the attestation of the clerk is in due form, hence this judgment should not have been admitted in evidence.

Here is all we have in authentication of this Virginia judgment:

"A copy Teste:—W. E. Counts, Clerk. By K. E. Fuller, D. C. ([Seal] Circuit Court, Dickenson County Virginia.)"

It will be noted there is no certificate by the judge that the clerk's certificate is in due form. That is absolutely indispensable. See 22 C. J. p. 846, sec. 1003; Jones on Evidence, 2d Ed.

"The judge seems to be vested with the power to determine whether the attestation is in due form, and his certificate to that effect is final. * * * * The judge's certificate that the clerk's certificate is in due form is indispensable and it is also conclusive on this point." Freeman on Judgments. 5th Ed., sec. 1037.

Valuable annotations will be found in 5 L. R. A., N. S., 938, and in 103 Am. St. Rep. 304. When this Virginia judgment is properly authenticated, it will import absolute verity. 22 C. J. p. 968, sec. 1206. Without proper authentication it should not have been admitted and it proves nothing.

### Facts in Former Convictions.

Allen contends the Commonwealth should have been required in this case to show the facts involved in the former convictions (a) and (b), supra. In other words, he wanted the court to retry these cases. There is no merit in this contention. See Dunnington v. Com., 231 Ky. 327, 21 S. W. (2d) 471. Nor had he the right to have the court require the Commonwealth to show these convictions had never been reversed, vacated, or set aside. The burden of showing such as that was on him. Tall v. Com., 110 S. W. 425, 33 Ky. Law Rep. 541.

### Identity.

Upon the Commonwealth there rested, of course, the burden of showing the identity of the appellant with the Joe Allen formerly convicted, see occurrences (a) and (b), supra, and this the Commonwealth did by the testimony on this trial of witnesses who had attended those former trials.

### Former Jeopardy.

Appellant in his brief discusses at length what he

calls former jeopardy, but he never entered such a plea. He pleaded simply, "not guilty," and never altered or offered to change that plea. Former conviction or acquittal to be available must be pleaded. Criminal Code of Practice, sec. 164; Com. v. Olds, 15 Ky. 137, 5 Litt. 137; Chambers v. Com., 10 Ky. Op. 540; Carter v. Com., 2 Ky. Law Rep. 311, 11 Ky. Op. 92; Fugate v. Com., 171 Ky. 227, 188 S. W. 324; Little v. Com., 197 Ky. 320, 247 S. W. 2; Sorrels v. Com., 197 Ky. 761, 248 S. W. 205; Carody v. Com., 198 Ky. 440, 248 S. W. 1013; Com. v. Methis, 203 Ky. 359, 262 S. W. 288.

Allen cites the case of Mullins v. Com., 258 Ky. 529, 80 S. W. (2d) 606, in support of his position, and says in his brief:

> "The record in this case shows the same indictment on which the other conviction was had and it shows that judgment to be identical with this."

That was written into the brief for Allen, in an effort to convince this court that this case is indistinguishable from the Mullins Case, supra. We do not know what were the terms of the indictment under which Allen's trial of April 13, 1936, was had, see (d), supra, but we do know it cannot be the same indictment as the one under which the conviction before us was had, for this indictment was not returned until April 3, 1937, almost one year after the former trial.

Allen must remember every presumption is in favor of the regularity of the conviction before us, and he may not insist that it is erroneous because of something he has not brought here. Hence the Mullins Case is inapplicable. We conclude from the record that after the trial of this habeas corpus case, (f), supra, the indictment involved in the trial of April 13, 1936, was dismissed without prejudice and the matter was resubmitted to the grand jury and it returned indictment (g), the one now before us. Allen cannot complain of former jeopardy when he procured the setting aside of the former judgment. Haskins v. Com., 1 S. W. 730, 8 Ky. Law Rep. 419; Wells v. Com., 6 S. W. 150, 9 Ky. Law Rep. 658; Hoskins v. Com., 152 Ky. 805, 154 S. W. 919; Newton v. Com., 197 Ky. 496, 247 S. W. 707. One may not complain of what a court does at his request, and Allen asked for this writ of habeas corpus.

For reasons indicated, the judgment is reversed.